**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Q2 WEALTH MANAGEMENT LLC,<br><br>Plaintiff,<br><br>v.<br><br>Q5 OPERATIONS LLC, OMAR BITAR, JEREMY BRANT SABA, MIKE PERSIA, EDWARD GRAHAM PERSIA, and BRADFORD KLEIN,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. __________ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Q2 Wealth Management LLC files this Original Complaint against Defendants Q5 Operations LLC, Omar Bitar, Jeremy Brant Saba, Mike Persia, Edward Graham Persia, and Bradford Klein, and alleges as follows.

**NATURE OF THE ACTION**

1. This is an action for infringement of a federally registered service mark and for false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).

2. Plaintiff owns the federally registered service mark Q5 WEALTH for wealth management, investment management, financial planning, and related financial services. Defendants advertise and provide the same kinds of services under the name Q5 WEALTH MANAGEMENT. That name was first used more than eight months after Plaintiff applied to register its mark. Defendants have

continued to use the name after Plaintiff gave written notice of its registration and asked that the use stop.

3. Plaintiff seeks a permanent injunction, its attorney fees, and its costs. Plaintiff does not seek damages or an award of Defendants' profits.

## THE PARTIES

4. Plaintiff Q2 Wealth Management LLC ("Q2") is a Kentucky limited liability company with its principal place of business at 1792 Alysheba Way, Suite 150, Lexington, Kentucky 40509.

5. Defendant Q5 Operations LLC is a Texas limited liability company. Its registered office is at 2615 Calder Avenue, #145, Beaumont, Texas 77702. It may be served with process through its registered agent, Omar Bitar, at that address. Q5 Operations LLC is managed by its members. Its certificate of formation names five managing members, each of them a limited liability company. They are OKB Operations LLC, BAK Operations LLC, MP3 Operations LLC, JBS Operations LLC, and EP1 LLC.

6. Defendant Omar Bitar is an individual who, on information and belief, is domiciled in Texas. He may be served with process at his place of business, 2615 Calder Avenue, Suite 150, Beaumont, Texas 77702, or wherever he may be found.

7. Defendant Jeremy Brant Saba is an individual who, on information and belief, is domiciled in Texas. He may be served with process at his place of business, 2615 Calder Avenue, Suite 150, Beaumont, Texas 77702, or wherever he may be found.

8. Defendant Mike Persia is an individual who, on information and belief, is domiciled in Texas. He may be served with process at his place of business, 2615 Calder Avenue, Suite 150, Beaumont, Texas 77702, or wherever he may be found.

9. Defendant Edward Graham Persia is an individual who, on information and belief, is domiciled in Texas. He may be served with process at his place of business, 2727 Allen Parkway, Suite 1500, Houston, Texas 77019, or wherever he may be found.

10. Defendant Bradford Klein is an individual who, on information and belief, is domiciled in Texas. He may be served with process at his place of business, 2615 Calder Avenue, Suite 150, Beaumont, Texas 77702, or wherever he may be found.

11. This Complaint refers to Defendants Bitar, Saba, Mike Persia, Edward Persia, and Klein together as the "Individual Defendants." It refers to the Individual Defendants and Q5 Operations LLC together as the "Q5 Defendants."

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

13. This Court has personal jurisdiction over Q5 Operations LLC because it is organized under Texas law and has its office in Texas.

14. This Court has personal jurisdiction over each Individual Defendant because, on information and belief, each is domiciled in Texas. In the alternative, the Court has personal jurisdiction over each Individual Defendant because he

advertises and provides financial services in Texas under the name Q5 WEALTH MANAGEMENT, and the claims against him arise out of that conduct.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. The practice that uses the name Q5 WEALTH MANAGEMENT has an office at 2727 Allen Parkway, Suite 1500, Houston, Texas 77019. Services are advertised and provided under that name to consumers in the Houston area from that office. The practice's website lists the Houston office as one of its two offices. The web pages for Defendant Edward Persia and for two other financial advisors of the practice, Scott Guptill and Chris Hall, identify each of them as a financial advisor in Houston, Texas. Chris Hall also reports to the Financial Industry Regulatory Authority that he is "a Financial Advisor teamed with Q5 Wealth Management at Ameriprise," that he conducts that activity at the Houston office, and that the business for which he conducts it is Q5 Operations LLC. The web pages for Defendants Bitar, Mike Persia, and Klein contain data, addressed to internet search engines, that identifies Houston, Texas as an area that each of them serves. The public records of the Financial Industry Regulatory Authority list the Houston office as a branch office location for each of the Individual Defendants.

16. Venue is also proper in this District under 28 U.S.C. § 1391(b)(1). All Defendants reside in Texas within the meaning of 28 U.S.C. § 1391(c). On information and belief, Defendant Edward Persia is domiciled in this District. On information and belief, Q5 Operations LLC has contacts with this District, through

the Houston office, that would be sufficient for personal jurisdiction if this District were a separate state.

## FACTS

### A. Q2 and its Q5 WEALTH mark

17. Q2 is an investment adviser registered with the United States Securities and Exchange Commission. Q2 provides financial planning and investment management services to individuals and families.

18. Q2 has one office, in Lexington, Kentucky. From that office, Q2 serves clients who live in Kentucky and clients who live in other states, including Texas, Michigan, and South Carolina. Q2 serves clients who live at a distance by telephone, by video conference, and through online client portals.

19. Q2 now serves clients who reside in sixteen states. Its plan is to reach new clients in every state through marketing directed to consumers throughout the United States.

20. Q2 has served clients who reside in Texas since February 2022. Two of Q2's investment adviser representatives have been registered in Texas as investment adviser representatives since February 14, 2022. Q2 has made a notice filing with the State of Texas as an investment adviser.

21. On November 20, 2022, Raymond M. Backers, Q2's owner, registered the internet domain name q5wealth.com. Q2 has held that domain name since then, and Q2 lists it on its Form ADV as one of Q2's websites. The domain name directs visitors to Q2's Q5 WEALTH web page.

22. On November 15, 2023, Q2 filed Application Serial No. 98/270,894 in the United States Patent and Trademark Office to register the service mark Q5 WEALTH on the Principal Register.

23. On May 20, 2025, the United States Patent and Trademark Office issued U.S. Registration No. 7,804,904 to Q2 for the mark Q5 WEALTH (the "Q5 WEALTH Mark") in standard characters for the following services in International Class 36, "Advice on finance during retirement; Consulting and information concerning insurance; Estate planning; Financial advice relating to tax; Financial asset management; Financial services, namely, wealth management services; Insurance agency and brokerage; Insurance consultation; Insurance information and consultancy; Insurance risk management; Insurance services in the nature of loss control management for others; Investment management; Providing information and advice in the field of finance, financial investments, financial valuations, and the financial aspects of retirement." A copy of the registration certificate is attached as Exhibit A.

24. The registration is valid and subsisting. Q2 is the owner of the registration and of the Q5 WEALTH Mark. Under 15 U.S.C. §§ 1057(b) and 1115(a), the registration is prima facie evidence of the validity of the Q5 WEALTH Mark, of Q2's ownership of the mark, and of Q2's exclusive right to use the mark in commerce for the services listed in the registration.

25. Under 15 U.S.C. § 1057(c), the filing of Q2's application on November 15, 2023, constitutes constructive use of the Q5 WEALTH Mark and gives Q2 a right of priority, nationwide in effect, as of that date.

26. Under 15 U.S.C. § 1072, the registration has been constructive notice of Q2's claim of ownership of the Q5 WEALTH Mark since May 20, 2025.

27. Q2 uses the Q5 WEALTH Mark to identify its financial planning and investment management services. Q2 builds those services around five areas of planning, which are retirement, investment, tax, insurance, and estate planning. A client may begin with one or more of those areas and add others over time.

28. In December 2024, Q2 began to display the Q5 WEALTH Mark on its website at www.q2wealth.com/q5wealth. That page describes Q2's services and tells consumers how to obtain them. The page has been available to the public since then.

29. In December 2024, Q2 described its services under the heading Q5 WEALTH in its Form ADV Part 2A brochure and delivered the brochure to its clients, including its clients who then resided in Texas. Q2's current brochure describes the Q5 WEALTH service. The brochure is available to the public on the Investment Adviser Public Disclosure website of the Securities and Exchange Commission.

30. By February 11, 2025, Q2 displayed the Q5 WEALTH Mark on its website to identify and advertise financial planning and investment management services that Q2 was then providing to clients in Kentucky and in other states. The

financial planning and investment management services on which Q2 relies here fall within the registration's wealth management and investment management services. Q2 continues to display the mark for those services and to provide them.

31. Q2's national Google advertising campaign for the Q5 WEALTH service began February 8, 2025, and continued until it was paused June 12, 2025, recording 3,101 clicks and 134,447 impressions. Consumers in Texas were among the visitors to Q2's Q5 WEALTH web page during that advertising.

32. The Q5 WEALTH Mark is inherently distinctive for the services listed in the registration.

33. As of September 29, 2026, the records of the United States Patent and Trademark Office showed no registration and no pending application, other than Q2's registration, for any mark containing "Q5" for services in International Class 36. On information and belief, no Defendant owns a federal registration or a pending federal application for any mark containing "Q5."

34. Q2 offers the Q5 WEALTH service to the public through its website and to its clients through its brochure. Q2 intends to expand its use of the Q5 WEALTH Mark.

**B. The Q5 Defendants and their use of Q5 WEALTH MANAGEMENT**

35. On information and belief, before August 2024, the Individual Defendants worked as financial advisors with UBS Financial Services Inc. in Beaumont and Houston, Texas. On information and belief, the team at that firm that included Defendants Mike Persia, Saba, Klein, and Edward Persia was known

as the “Persia Saba Klein Wealth Management Group.” On information and belief, none of the Individual Defendants used a name containing “Q5” for financial services before August 2024.

36. Q5 Operations LLC was formed on August 2, 2024. According to the public records of the Financial Industry Regulatory Authority, each of the Individual Defendants ended his registration with UBS Financial Services Inc. in August 2024 and became registered with Ameriprise Financial Services, LLC (“Ameriprise”) on August 9, 2024.

37. In August 2024, the Q5 Defendants began to use the name and mark Q5 WEALTH MANAGEMENT for their financial advisory practice (the “Practice”). On August 13, 2024, Ameriprise Financial, Inc. issued a press release that announced that “Q5 Wealth Management” had joined its independent channel. The press release named the five Individual Defendants as the financial advisors of the team. A copy of that press release is attached as Exhibit B.

38. The name Q5 WEALTH MANAGEMENT was first used more than eight months after November 15, 2023, the date on which Q2 filed its application to register the Q5 WEALTH Mark.

39. The name and mark Q5 WEALTH MANAGEMENT is used to advertise and provide financial advice, financial planning, retirement planning, tax planning and estate planning strategies, investment advice, investment management, insurance, and annuities. Those services are the same as, or closely

related to, the services listed in Q2's registration and the services that Q2 provides under the Q5 WEALTH Mark.

40. The Practice has offices at 2615 Calder Avenue, Suite 150, Beaumont, Texas 77702, and 2727 Allen Parkway, Suite 1500, Houston, Texas 77019.

41. The name and mark Q5 WEALTH MANAGEMENT is displayed on web pages at www.ameripriseadvisors.com/team/q5-wealth-management, on a separate web page for each of the Practice's financial advisors, in a logo, in the Practice's email address (q5wealthmanagement@ampf.com), and on a LinkedIn page that carries the name Q5 Wealth Management. Copies of pages from the website are attached as Exhibit C.

42. On information and belief, Q5 Operations LLC manages the business of the Practice, and the Practice's use of the name Q5 WEALTH MANAGEMENT constitutes trademark use by Q5 Operations LLC and by the Individual Defendants.

43. Q2 has not consented to any Defendant's use of the name Q5 WEALTH MANAGEMENT or of any other name or mark that contains "Q5." No Defendant is affiliated with Q2 or licensed by Q2.

### C. The role of each Individual Defendant

44. Each of the Individual Defendants is a founder of the Practice. On July 21, 2025, Ameriprise Financial, Inc. issued a press release that described the Practice as "an established Ameriprise practice led by managing partners" and then

named the five Individual Defendants. A copy of that press release is attached as Exhibit D.

45. A web page on the website www.ameripriseadvisors.com is devoted to Defendant Bitar. It identifies him as "Managing Partner of Q5 Wealth Management" and offers his services as a financial advisor under that name. Bitar has reported to the Financial Industry Regulatory Authority that he is the owner of OKB Operations LLC and a co-owner of Q5 Operations LLC, and that the business of each company is to manage his business with Ameriprise. Bitar is the registered agent of Q5 Operations LLC. Two other financial advisors of the Practice have reported to the Financial Industry Regulatory Authority that Q5 Operations LLC is the entity "for which Omar Bitar is franchise advisor." The press release of July 21, 2025 (Exhibit D) quoted Bitar as "financial advisor and managing partner of Q5 Wealth Management." Bitar received a copy of Q2's letter of May 21, 2026, which is described below, and he afterward communicated with Q2 and with Q2's counsel about it on behalf of the Practice.

46. A web page on the same website is devoted to Defendant Saba. It identifies him as "Managing Partner of Q5 Wealth Management" and offers his services as a financial advisor under that name. Saba has reported to the Financial Industry Regulatory Authority that he is the owner of JBS Operations LLC and a co-owner of Q5 Operations LLC, and that the business of each company is to manage his business with Ameriprise. The press release of August 13, 2024 (Exhibit

B) quoted Saba about the Practice's services to its clients. Saba received a copy of Q2's letter of May 21, 2026.

47. A web page on the same website is devoted to Defendant Mike Persia. It identifies him as "Managing Partner of Q5 Wealth Management" and offers his services as a financial advisor under that name. Mike Persia has reported to the Financial Industry Regulatory Authority that he is the owner of MP3 Operations LLC and a co-owner of Q5 Operations LLC. He has also reported that, since August 8, 2024, he has been an owner of "Q5 Wealth Management" and that he spends 60 hours each month managing that advisory business. The press release of August 13, 2024 (Exhibit B), and a press release of November 11, 2024, which is described below, quoted Mike Persia on behalf of the Practice. Q2's letter of May 21, 2026, was addressed to Mike Persia.

48. A web page on the same website is devoted to Defendant Edward Persia. It identifies him as "Managing Partner of Q5 Wealth Management" and as a financial advisor in Houston, Texas, and offers his services under that name. Edward Persia has reported to the Financial Industry Regulatory Authority that he is the owner of EP1 LLC and a co-owner of Q5 Operations LLC, and that he spends 60 hours each month managing the advisory business through Q5 Operations LLC.

49. A web page on the same website is devoted to Defendant Klein. It identifies him as "Managing Partner of Q5 Wealth Management" and offers his services as a financial advisor under that name. Klein has reported to the Financial Industry Regulatory Authority that he is the owner of BAK Operations LLC and a

co-owner of Q5 Operations LLC, and that the business of each company is to manage his business with Ameriprise. Klein received a copy of Q2's letter of May 21, 2026.

50. On information and belief, each of the Individual Defendants took part in the decision to adopt the name Q5 WEALTH MANAGEMENT. Each of them personally uses that name to advertise and provide his own services to his own clients and prospective clients. On information and belief, each of them, through his own company and through Q5 Operations LLC, authorizes and directs the Practice's use of the name and has the authority, with the other Individual Defendants, to end that use.

**D. The geographic reach of the Practice**

51. The Practice is large, and it is not confined to one locality. The press release of August 13, 2024 (Exhibit B) described the Practice as "managing $1.5 billion in client assets in Beaumont and Houston, Texas." The same press release stated, "Q5 Wealth Management serves high-net-worth clients across the United States." It also stated that the Individual Defendants chose their new firm in part to "significantly scale their practice."

52. On November 11, 2024, Ameriprise Financial, Inc. issued a press release that quoted Defendant Mike Persia as saying, "We want to grow our footprint and provide more life-changing financial advice to high-net-worth clients across the country." A copy of that press release is attached as Exhibit E.

53. The Practice has grown since it adopted the name. It began in August 2024 with the five Individual Defendants as its financial advisors. The press release of July 21, 2025 (Exhibit D) stated, “Today, Q5 Wealth Management includes 11 financial advisors and 7 support staff who manage over $1.9 billion in client assets.” As of September 29, 2026, the Practice’s website listed thirteen financial advisors. Seven of the thirteen joined the Practice after May 20, 2025, the date on which Q2’s registration issued.

54. The Practice offers its services to clients at a distance. The Practice’s website offers meetings in person, by telephone, and online. It states, “We meet when, where and how you need, based on your preferences and financial needs.”

55. According to the public records of the Financial Industry Regulatory Authority, as of September 29, 2026, the thirteen financial advisors of the Practice together held broker registrations in 41 jurisdictions, which are 40 states and the District of Columbia. Defendant Bitar held broker registrations in 38 jurisdictions. Defendant Mike Persia held them in 16 jurisdictions, Defendant Saba in 13, Defendant Edward Persia in 13, and Defendant Klein in 6.

56. The web page for each Individual Defendant states that he “may only conduct securities business with residents of states in which the advisor is properly registered.” Those registrations permit securities business with residents of numerous states. The Practice also publicly states that it serves clients across the United States and seeks further national growth.

57. The jurisdictions in which one or more of the Individual Defendants hold broker registrations include Texas, Michigan, and South Carolina. Q2's investment adviser representatives are registered in each of those three states, and Q2 has clients in each of them. Those jurisdictions also include other states in which Q2 has served clients, among them Missouri, Indiana, Ohio, and Tennessee.

58. Eleven of the Practice's thirteen financial advisors hold broker registrations in Louisiana, and six of them hold Louisiana insurance licenses. Defendant Bitar is registered as an investment adviser representative in Texas and, since May 11, 2026, in Florida.

59. Q2 and the Q5 Defendants offer the same kinds of services to the same class of purchasers, who are individuals and families seeking advice about their financial affairs. Both reach those purchasers through the internet. Both serve clients who live at a distance from their offices, and both do business in Texas and in other states.

**E. Notice to Defendants and their continued use**

60. By letter dated May 21, 2026, counsel for Q2 notified the Practice in writing of Q2's registration of the Q5 WEALTH Mark and of Q2's priority date of November 15, 2023. The letter was sent to Defendant Mike Persia by delivery service and by email, with copies by email to Defendants Bitar, Saba, and Klein.

61. After the Practice received notice of the registration, Q2 also communicated its objection to continued use of the name Q5 WEALTH MANAGEMENT and requested that the Practice discontinue that name.

62. On information and belief, each Defendant has received notice of Q2's registration and objection.

63. The use has not stopped. As of the date of this Complaint, the Q5 Defendants continue to use the name and mark Q5 WEALTH MANAGEMENT as described above.

64. Defendants have continued to use the name with knowledge of Q2's registration and of Q2's objection.

**F. Likelihood of confusion**

65. The wording Q5 WEALTH MANAGEMENT incorporates Q2's entire Q5 WEALTH Mark and adds the descriptive word MANAGEMENT.

66. The name Q5 WEALTH MANAGEMENT is used for services that are the same as services for which the Q5 WEALTH Mark is registered and used.

67. Defendants' use of the name Q5 WEALTH MANAGEMENT is likely to cause confusion, to cause mistake, and to deceive. Consumers who encounter both names are likely to believe that Defendants' services come from Q2, or that Defendants are affiliated with, sponsored by, or approved by Q2.

68. The Practice is larger than Q2, and the name Q5 WEALTH MANAGEMENT has been promoted in national press releases. Consumers are also likely to believe that Q2's Q5 WEALTH service comes from Defendants, or that Q2 is affiliated with, sponsored by, or approved by Defendants. The Practice's promotion of the same dominant wording alongside Ameriprise's name is likely to cause consumers encountering Q2's Q5 WEALTH service to believe that Q2 is

affiliated with the Practice or Ameriprise. Consumers may also believe that Q2 is the junior user and an infringer.

**G. Irreparable injury and the equities**

69. Defendants' use of the name deprives Q2 of control over the reputation and goodwill of the Q5 WEALTH Mark. Q2 has no control over the quality of the services that Defendants provide under the name. Continued use threatens Q2's control over the reputation of its Q5 WEALTH service as Q2 markets and provides that service to additional clients.

70. That injury is continuing. It cannot be measured with certainty, and an award of money would not fully compensate Q2 for it. Q2 has no adequate remedy at law. Under 15 U.S.C. § 1116(a), Q2 is entitled to a rebuttable presumption of irreparable harm upon a finding of infringement.

71. The balance of hardships favors Q2. An injunction would require Defendants to adopt a different name for the Practice. It would not prevent any Defendant from providing financial services. On information and belief, the Individual Defendants provided the same services under other names before August 2024. A reasonable period in which to change the name would limit any hardship to Defendants.

72. An injunction would serve the public interest. The public has an interest in freedom from confusion about the source of financial services and in the enforcement of federally registered marks.

73. Unless Defendants are enjoined, their use of the name will continue, and it will expand as the Practice grows.

**COUNT I**
**Infringement of a Registered Mark, 15 U.S.C. § 1114(1)**
**(Against All Defendants)**

74. Q2 incorporates the allegations of the preceding paragraphs.

75. Q2 owns the Q5 WEALTH Mark and U.S. Registration No. 7,804,904.

76. The Q5 Defendants have used and continue to use in commerce, without Q2's consent, a reproduction, copy, or colorable imitation of the registered Q5 WEALTH Mark in connection with the sale, offering for sale, and advertising of services. That use is likely to cause confusion, to cause mistake, or to deceive.

77. Each Individual Defendant is personally liable because he personally uses the name to advertise and provide his own services and because he has authorized and directed the Practice's use of the name, as alleged above.

78. Defendants' conduct infringes Q2's registered mark in violation of 15 U.S.C. § 1114(1).

79. Q2 is entitled to a permanent injunction under 15 U.S.C. § 1116. Q2 is also entitled to its reasonable attorney's fees under 15 U.S.C. § 1117(a) because this is an exceptional case.

**COUNT II**
**False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A)**
**(Against All Defendants)**

80. Q2 incorporates the allegations of the preceding paragraphs.

81. The Q5 Defendants' use in commerce of the name Q5 WEALTH MANAGEMENT in connection with their services is a false designation of origin. It is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of the Q5 Defendants with Q2, and as to the origin, sponsorship, or approval of their services.

82. Each Individual Defendant is personally liable for the reasons alleged in Count I.

83. Defendants' conduct violates 15 U.S.C. § 1125(a)(1)(A).

84. Q2 has been injured and is likely to be injured further by Defendants' conduct. Q2 is entitled to a permanent injunction under 15 U.S.C. § 1116 and to its reasonable attorney fees under 15 U.S.C. § 1117(a).

## PRAYER FOR RELIEF

Q2 asks the Court to enter judgment in its favor and against Defendants, and to grant the following relief:

A. A permanent injunction that prohibits each Defendant, and each person described in Rule 65(d)(2) of the Federal Rules of Civil Procedure who receives actual notice of the injunction, from doing any of the following in the United States: (1) using the name or mark Q5 WEALTH MANAGEMENT, the mark Q5 WEALTH, or any other name or mark that is confusingly similar to the Q5 WEALTH Mark, as a service mark, trade name, or assumed name in connection with the advertising, offering, or providing of financial services; (2) representing

that any Defendant or its or his services are affiliated with, sponsored by, or approved by Q2; and (3) assisting any other person in doing any of those acts.

B. An order that requires each Defendant, within a period that the Court sets, to remove the name Q5 WEALTH MANAGEMENT, and every other name or mark that the injunction prohibits, from all websites, web pages, social media pages, email addresses, signs, stationery, advertising, directory listings, and other materials that the Defendant owns or controls and that are used in connection with financial services. This relief does not require the destruction or alteration of historical regulatory or litigation records.

C. An order under 15 U.S.C. § 1118 that requires each Defendant to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements in its or his possession that bear the name Q5 WEALTH MANAGEMENT or any other colorable imitation of the Q5 WEALTH Mark, except materials subject to regulatory retention or litigation-preservation obligations, which shall be preserved without further promotional use.

D. An order under 15 U.S.C. § 1116(a) that requires each Defendant to file with the Court and serve on Q2, within thirty days after service of the injunction or within such other period as the Court directs, a

written report under oath that sets out in detail the manner and form in which the Defendant has complied with the injunction.

E. An award to Q2 of its reasonable attorney fees under 15 U.S.C. § 1117(a).

F. An award to Q2 of its costs.

G. All other relief to which Q2 is entitled.

Dated: November 20, 2026

Respectfully submitted,

s/ Sarah R. Smith
Sarah R. Smith
Texas Bar No. 24056346
DINSMORE & SHOHL LLP
600 Travis Street, Suite 7350
Houston, Texas 77002
Telephone: (346) 293-7843
Email: Sarah.Smith@dinsmore.com

William L. Montague, Jr.
Kentucky Bar No. 84630
(motion for admission pro hac vice to be filed)
MONTAGUE LAW PLLC
P.O. Box 21945
Lexington, Kentucky 40522
Telephone: (859) 550-9000
Email: will.montague@wmlex.com

*Counsel for Plaintiff*